UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAKEAL DEVONER SAWYER,

     Plaintiff,                     Civil Action No.: 18-10246
                                       Honorable Sean F. Cox
v                                   Magistrate Judge Elizabeth A. Stafford

BRETT STEMEN,

     Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 45]

## I.   INTRODUCTION

Plaintiff Shakeal Devoner Sawyer, a state prisoner in the custody of the Michigan Department of Corrections (MDOC), sues Defendant Brett Stemen, a custody officer of the Macomb Correctional Facility.[1]   [ECF No. 1].   Stemen moves for summary judgment under Federal Rules of Civil Procedure 56(a).   [ECF No. 45].   For the reasons below, the Court recommends that the Stemen's motion for summary judgment be granted.

_____

[1]The Honorable Sean F. Cox referred all pretrial matters to the undersigned.   [ECF No. 8].

## II. BACKGROUND

Sawyer has been imprisoned for almost eight years and has been in
at least seven fights during that period.  [ECF No. 45-4, PageID.189].  The
altercation relevant here happened in June 2016, when Sawyer
approached another prisoner from behind and punched him with a closed
fist.  [ECF No. 45-2, PageID.179].  A photo of the other prisoner shows a
prominent injury above his right eye.  [*Id.*, PageID.182].  Sawyer was
charged with misconduct and pleaded guilty to assault and battery.  [*Id.*,
PageID.179, 181].

After Sawyer's assault of the other prisoner, Stemen tackled Sawyer
to the ground.  [ECF No. 1, PageID.5; ECF No. 45-3, PageID.185-186].  In
dispute is what happened before Stemen tackled Sawyer.  In his complaint,
Sawyer alleged that he complied with an order to stop and put his hands in
the air.  [ECF No. 1, PageID.5].  He said that he then "was ordered to get
on the floor" and had begun to "kneel down to the floor."  [*Id.*].  But in an
affidavit included in Sawyer's response to the motion for summary
judgment, he contradicts his complaint by alleging, "At no time did any
officer tell me to get down on the floor."  [ECF No. 55, PageID.259].

Sawyer claims in both his complaint and responsive brief that Stemen
ran over and slammed him to the ground, with Stemen stating, "How did

that feel bitch?"  [ECF No. 1, PageID.5; ECF No. 55, PageID.259].  In his

complaint, Sawyer claimed that Stemen began "to indicate racial remarks

as to why plaintiff assaulted a white guy and making reference to this being

his idea of getting even."  [ECF No. 1, PageID.5].  But in his responsive

affidavit, Sawyer does not allege that Stemen made any remarks related to

race.  [ECF No. 55, PageID.260].  Instead, Sawyer states only that he

*believed* that Stemen slammed him to the ground because Sawyer had

assaulted a white prisoner.  [*Id*.].  In both his complaint and response,

Sawyer alleges that Stemen caused him a back injury.  [ECF No. 1,

PageID.5; ECF No. 55, PageID.260].

By affidavit, Stemen states that he tackled Sawyer because of

the danger he posed to other inmates, and Stemen denies that he

made any racial comments.  Stemen says:

> 7.  I entered the mess hall and witnessed Plaintiff punching another prisoner in the head.
> 8.  I verbally commanded Plaintiff to stop his assault.
> 9.  Plaintiff continued to assault the other inmate.
> 10.  I verbally commanded Plaintiff to get on the ground.
> 11.  There were dozens of other inmates in the mess hall at the time and Plaintiff was a threat to any of them until he was on the ground and immobile.
> 12.  I did not know if Plaintiff had a weapon.
> 13.  The prisoner Plaintiff had assaulted was bleeding from the face.
> 14.  Despite my order, Plaintiff refused to get on the ground.
> 15.  I approached Plaintiff and again ordered him to get on the ground.

3

16.   Plaintiff again refused to get on the ground.

17.   When I reached Plaintiff, I took him to the ground, as he refused to go to the ground willingly, per policy and in line with training officers received for restraining non-compliant inmates.

18.   Once he was on the ground, I was able to restrain Plaintiff.

19.   I put hand restraints on Plaintiff and removed him from the mess hall.

20.   At no time did I tell Plaintiff 'how does that feel bitch?' or use any similar language.

21.   At no time did I make racial remarks toward or around Plaintiff.

[ECF No. 45-3, PageID.185-186].

Sawyer filed a grievance alleging that Stemen had no cause to take him down, but an inspector denied the grievance after viewing a video of the incident.  [ECF No. 45-5, PageID.192-193].  The inspector "felt the use of force was warranted because he (Sawyer) failed to follow directions of the staff to get on the ground."  [ECF No. 45-5, PageID.192-193].  The inspector continued, "Prisoner Sawyer was very assaultive with prisoner Lazurus and could have seriously injured more prisoners and staff.  The chow hall was full of prisoners at the time of Sawyers assaultive behavior and the situation need to be ended quickly to avoid Sawyer from assaulting anyone else."  [*Id.*].

Sawyer alleges in his responsive brief that he "suffered such great pain at times from the injury that Defendant Stemen caused to Plaintiff's

4

back that Plaintiff can't get any sleep." [ECF No. 55, PageID.264]. Sawyer claims that he "had to see a psych because of the injury caused by Defendant Stemen and has lost sleep." [*Id.*]. But Sawyer provides no proof of these claims of injury aside from his own affidavit. [See ECF No. 55, PageID.259-262]. And although records Stemen submitted corroborate that Sawyer complained of back pain in the days after the June 2016 incident, records from the MDOC behavioral health segregation unit after the incident show that Sawyer's sleep was not disrupted and his mood was euthymic. [ECF No. 45-6, PageID.198-203]. There is no medical documentation in the record after June 2016.

## III.   ANALYSIS

## A.

Stemen moves for summary judgment of Sawyer's excessive force claim and argues that he is entitled to qualified immunity. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). In the Sixth Circuit, a constitutional violation is established by binding precedent from the Supreme Court or this circuit, and a court should look beyond those precedents only in extraordinary cases. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993), *superseded by*

6

statute on other grounds as stated in *Livermore ex rel. Rohm v. Lubelan*,

476 F.3d 397, 407–08 (6th Cir. 2007).

The Supreme Court has warned courts "not to define clearly

established law at a high level of generality." *Kisela v. Hughes*, __ U.S.__,

138 S.Ct. 1148, 1152 (2018) (citation and quotation marks omitted). "The

general proposition, for example, that an unreasonable search or seizure

violates the Fourth Amendment is of little help in determining whether the

violative nature of particular conduct is clearly established." *Ashcroft v. al-

Kidd*, 563 U.S. 731, 742 (2011). A case need not be directly on point to be

clearly established, but existing precedent must place officials on notice

that the conduct at issue is unlawful. *Kisela,* 138 S.Ct. at 1152-53.

Under these standards, Stemen's motion for summary judgment

should be granted.

**B.**

Existing precedent establishes that courts give wide latitude to prison

officials to use force to quell prison disturbances. Thus, when a prison

official is accused of excess force in violation of the Eighth Amendment's

Cruel and Unusual Punishment Clause, the "core judicial inquiry" is

"whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson v.*

*McMillian*, 503 U.S. 1, 6-7 (1992).  The Supreme Court reasoned:

> [O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'

*Id.* at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).  The Court

has thus repeatedly emphasized, "Prison administrators . . . should be

accorded wide-ranging deference in the adoption and execution of policies

and practices that in their judgment are needed to preserve internal order

and discipline and to maintain institutional security."  *Bell v. Wolfish*, 441

U.S. 520, 547 (1979); *see also Whitley*, 475 U.S. at 321-22 (same);

*Hudson*, 503 U.S. at 6 (same).

When applying this standard, courts consider the extent of injury

suffered by the inmate as one relevant factor, but the lack of a serious

injury does not end the analysis.  *Hudson,* 503 U.S. at 8.  "When prison

officials maliciously and sadistically use force to cause harm, contemporary

standards of decency always are violated," so a violation of the Eighth

Amendment may be found.  *Id.* at 9.  A *de minimis* use of force does not

violate the Cruel and Unusual Punishment Clause.  *Id.* at 10.  In *Hudson*,

the blows directed at the inmate that "caused bruises, swelling, loosened

teeth, and a cracked dental plate, [were] not *de minimis* for Eighth

Amendment purposes." *Id.*

In contrast, in *Lockett v. Suardini*, the court found the prison officials'

use of force to be a *de minimis* response to the plaintiff's aggressive

behavior.  526 F.3d 866, 874–76 (6th Cir. 2008).

> Shoving, grabbing, and bending back two of Lockett's fingers
> also required only minimal force and was reasonably related to
> the need for forcibly bringing Lockett under control and
> returning him to his cell. This conclusion is reinforced by the
> fact that Lockett, by his own account, suffered at best only
> minor lacerations and cuts, and that undisputed evidence
> showed no dislocation or fracture in his hand.

*Id.*  (citation and quotation marks omitted).

Here, Stemen's motion for summary judgment should be

granted, as there is no support for Sawyer's argument that Stemen

used excessive force.  Stemen was confronted with Sawyer's violent

punch to another prisoner's face in the chow hall.  Stemen had to

decide in haste how to prevent more harm to other prisoner and

anyone else in the area.  Sawyer alleges in his complaint that he

complied with an order to get on the floor, but he says in his affidavit

that he received no such order.  [ECF No. 1, PageID.5; ECF No. 55,

PageID.259].  For deciding the motion for summary judgment, it does

not matter which of Sawyer's claims is true.  Under either scenario,

9

Stemen's decision to tackle Sawyer to the ground cannot be described as malicious or sadistic.

Sawyer suggests in his response that he did not pose any threat when Stemen restrained him, but Stemen could not have anticipated what Sawyer might do to those in the area immediately after he assaulted another inmate. There is no genuine dispute that Stemen's actions were a "good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7.

It is also relevant that, according to the evidence, Sawyer suffered a *de minimis* back injury that did not affect his sleep or mood. [ECF No. 45-6, PageID.198-203]. Sawyer alleges that he "suffered such great pain at times from the injury that Defendant Stemen caused to Plaintiff's back that Plaintiff can't get any sleep." [ECF No. 55, PageID.264]. The only evidence for this claim is Sawyer's affidavit. [*Id.*, PageID.260]. And none of the records show that he suffered anything more than temporary back pain in June 2016. Thus, Sawyer offers a scintilla of evidence that is insufficient for a jury to reasonably find that he suffered more than a *de minimis* injury. *Liberty Lobby*, 477 U.S. at 252.

10

Finally, Sawyer cites no existing precedent that would have placed Stemen on notice that his conduct violated a clearly established constitutional right.  Thus, Stemen has a right to qualified immunity.  *Kisela,* 138 S.Ct. at 1152-53.  The existing precedent shows that the Court should give wide-ranging deference to Stemen's effort to restrain Sawyer from further assaultive behavior.  Stemen's motion for summary judgment should be granted.

## II.   CONCLUSION

Stemen's motion for summary judgment **[ECF No. 45]** should be **GRANTED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 24, 2020

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

12

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.


## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

13